UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| REBECCA RODDY, | ) |
|     Plaintiff, | ) |
| v. | ) |
| SEARS, ROEBUCK & COMPANY, | )    No. 1:04-CV-187 |
|     Defendant and Third Party Plaintiff, | )    Collier / Lee |
| v. | ) |
| GRANGE MUTUAL INSURANCE COMPANY, | ) |
|     Third Party Defendant. | ) |

**REPORT AND RECOMMENDATION**

This action arises out of damage to Plaintiff Rebecca Roddy's Chattanooga, Tennessee residence caused by a fire that allegedly was the result of the negligent installation of an HVAC unit that Plaintiff purchased from Defendant/Third Party Plaintiff Sears, Roebuck & Company ("Sears") (Complaint, Court File No. 1, pt. 3). Plaintiff filed the action on May 17, 2004 in the Circuit Court of Hamilton County, Tennessee, and Sears removed it to this Court pursuant to 28 U.S.C. § 1441, asserting the Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332 (Notice of Removal, Court File No. 1, pt. 1). On September 9, 2004, Sears filed a Third Party Complaint against Bill Wade d/b/a Superior Enterprises ("Wade")[1] and Grange Mutual Insurance Company ("Grange Mutual"), alleging an entitlement to recover from Wade and Grange Mutual all or part of

---

[1] On March 9, 2005, Sears filed a notice of voluntary dismissal as to Bill Wade, pursuant to Fed. R. Civ. P. 41(a)(1) (Court File No. 22).

what Plaintiff may recover from Sears (Court File No. 9, ¶ 2). According to the Third Party Complaint, Wade agreed to indemnify Sears for claims arising out of work he would perform (*i.e.*, installing HVAC units sold by Sears) pursuant to a contract with Sears (*id.* ¶ 3). The Third Party Complaint also alleged Grange Mutual issued a liability insurance policy to Wade relevant to Wade's contract with Sears (*id.* ¶ 4).

Before the Court is a Motion for Summary Judgment filed by Third Party Defendant Grange Mutual (Court File No. 16). This matter was referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), to issue a report and recommendation regarding the resolution of Grange Mutual's motion (*See* Court File No. 26). In preparing this report and recommendation, the undersigned considered Grange Mutual's supporting brief and exhibits (Court File No. 17), the response of Sears (Court File Nos. 18, 19), Grange Mutual's reply (Court File No. 20), and Sears's supplemental submissions (Court File Nos. 33, 34).[2] For the reasons explained below, I **RECOMMEND** the Court **GRANT** Grange Mutual's motion for summary judgment (Court File No. 16).

I. **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

---

[2] In its initial response (filed on January 31, 2005), Sears requested the Court allow time for discovery to occur before ruling upon Grange Mutual's motion for summary judgment, it submitted an affidavit of counsel to support the request, and it relied upon Fed. R. Civ. P. 56(f) (Court File Nos. 18, 19). After the district court referred the motion for summary judgment and Sears issued notices to depose Bill Wade and Neal Guffey, the Court issued an Order allowing the parties to supplement their submissions relating to the summary judgment motion until May 27, 2005 (*see* Court File No. 31). Pursuant to that Order, Sears timely filed a supplemental response and several exhibits, including excerpts from the depositions of Bill Wade and Neal Guffey (Court File Nos. 33, 34). Neither Sears nor any other party stated, at that time or thereafter, that it needed to conduct any more discovery to support its position as to Grange Mutual's motion for summary judgment.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make an issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it

may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS

On or about March 14, 2002, Plaintiff purchased a new HVAC unit and installation services from Sears (*See* Court File No. 1, part 5, at 1). Pursuant to a "Contract For Furnishing And Installing H.V.A.C. Materials" with Sears (Court File No. 9, part 2, Exh. B, at 7-9 of 22), Wade installed the HVAC unit at Plaintiff's residence shortly after the purchase (Court File No. 9, part 2, Exh. D, at 12-13 of 22; Court File No. 34, part 6, Deposition of Bill Wade ("Wade Dep.") at 115). According to Wade, he did not perform any electrical work at Plaintiff's residence, but rather Mark Hindman of Lighthouse Electric was the electrician who did that work (Wade Dep. at 43-44). Wade's only work activity at the Roddy residence occurred during the second half of March 2002, such that any physical injury he may have done to the house would have happened during that period (*id.* at 115-16). Sometime before the fire that damaged Plaintiff's residence, Sears sent other crews to Plaintiff's residence to do minor work of some nature (*id.* at 44).

The contract between Sears and Wade required that Wade procure and keep in force a comprehensive general liability insurance policy for the duration of their agreement (Court File No. 9, part 2, Exh. B, at 9 of 22, ¶ 10).[3] To demonstrate compliance with this portion of the

---

[3] Paragraph 10 of the agreement between Wade and Sears states the following:
> Contractor shall at its own expense procure and keep in force during the terms of this Contract, Comprehensive General Liability Insurance, including Products and Completed Operations Coverage, Motor Vehicle Public Liability Insurance, and Worker's Compensation and Employer's Liability Insurance in amounts not less than those recommended by Sears. Contractor agrees to furnish certificates of Insurance or other evidence acceptable to Sears of such insurance coverage. Such evidence of insurance must contain a

4

agreement, Wade presented Sears with a certificate of liability insurance that indicated Grange Mutual issued Wade a commercial general liability policy for the term from May 2, 2001 to May 2, 2002 (*See* Court File No. 9, part 2, Exh. C, at 10-11 of 22; Court File No. 17, part 2, Affidavit of Mary L. Harrington ("Harrington Aff.") ¶ 4). A box at the bottom of the certificate lists Sears as the "Certificate Holder" and appears to also indicate Sears is an additional insured (Court File No. 9, part 2, Exh. C, at 11 of 22). Further, the certificate states:

> Should any of the above described polices be cancelled before the expiration date thereof, the issuing insurer will endeavor to mail 10 days written notice to the certificate holder named to the left, but failure to do so shall impose no obligation of liability of any kind upon the insurer, its agents or representatives.

(*Id.*).

In March 2002, Wade renewed the policy with Grange Mutual for the term from May 2, 2002 to May 2, 2003 (Court File No. 17, part 3, at 1 of 39; Harrington Aff. ¶ 4). The policy contained the following relevant language:

> SECTION I - COVERAGES
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

---

notice provision whereunder ten (10) days prior written notice of any material change or cancellation must be given by the insurance carrier to Sears. If Contractor is not required under any applicable Worker's Compensation Act to operate under or become subject to such act but is permitted to do so, Contractor will duly elect to be governed by and operate under said Act.

(Court File No. 9, part 2, Exh. B, at 9 of 22, ¶ 10).

5

      . . .
      * * *
- b. This insurance applies to "bodily injury" and "property damage" only if:
  - (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
  - (2) The "bodily injury" or "property damage" occurs during the policy period.

(Court File No. 17, part 4, at 9 of 35). The policy also included the following definitions:

SECTION V - DEFINITIONS
* * *
12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *
15. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Court File No. 17, part 4, at 20-21 of 35).

On August 21, 2002, Grange cancelled Wade's general commercial liability policy for nonpayment of premium (Harrington Aff. ¶ 5; *see also* Court File No. 17, part 5, at 1).[4] On May 21, 2003, an electrical fire caused damage to Plaintiff's residence (Complaint, Court File No. 1, part 3, ¶¶ 5-6). Plaintiff's complaint alleges the fire was caused by the negligent installation of the HVAC unit or the failure of repairmen to remedy the negligent installation of, or electrical problems with, the HVAC unit during numerous service calls to Plaintiff's residence between the installation and

---

[4] Sears asserts in its response that it never received a copy of the cancellation notice (Court File No. 19, at 2, 3). Sears also asserts it never received a copy of the insurance policy that Grange Mutual issued to Wade (*id.*).

the fire (*id.*, ¶ 6).[5] Plaintiff claims the following damages: increased electrical bills between the installation and the fire; repair and replacement of the structure; additional living expenses incurred due to the fire; loss and destruction of contents of Plaintiff's home; cost of the HVAC unit; lost time from work; and suffering, inconvenience, and emotional strain (*id.*, ¶ 7). After Sears removed the case to federal court, Sears filed its third party complaint seeking indemnity from Wade and Grange Mutual in this action (Court File No. 9).

## III. DISCUSSION

The pending motion for summary judgment requires the Court to interpret the commercial general liability policy Grange Mutual issued to Wade. The Court must apply Tennessee law in this action because subject matter jurisdiction is based on the parties' diverse citizenship. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). Under Tennessee law, a court should construe an insurance policy in the same manner as it would construe any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). The policy language should be taken and understood in its plain, ordinary, and popular sense. *Id.* When a court must resolve a dispute concerning contract interpretation, it should ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language in the contract. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). If possible, all provisions in the contract should be construed in harmony with each other to promote consistency and to avoid repugnancy between the various provisions. *Id.* Language in an insurance policy is ambiguous if there are multiple reasonable interpretations, and ambiguous language that would limit

---

[5] Grange Mutual states in its brief that "[f]or purposes of argument, it is assumed that the fire was the result of negligent installation/maintenance of the HVAC system." (Court File No. 17, at 4).

7

the coverage of the policy must be construed against the insurance company and in favor of the insured. *Hutchison*, 15 S.W.2d at 815.

In Tennessee, exceptions, exclusions, and limitations in insurance policies must be construed against the insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). The entire policy, however, including insuring clauses and exceptions thereto, must be read as a whole. *Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782 (6th Cir. 1986). Further, exceptions should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998). Guided by these general rules of interpretation, the Court will discuss the general commercial liability policy and whether Grange Mutual is obligated to provide coverage under the policy.

The general commercial liability policy in this case states Grange Mutual would pay the amounts that Wade is legally obligated to pay as damages because of "property damage" to which the insurance applies. The insurance applies to cover "property damage" only if the property damage occurs during the policy period. "Property damage" means physical injury to tangible property and the resulting loss of use of that property. There is no dispute Plaintiff suffered physical injury to tangible property when her residence burned on May 21, 2003. However, it is also undisputed the policy period ended on August 21, 2002 when Grange Mutual cancelled Wade's policy for nonpayment of premium. Thus, Grange Mutual is not obligated to provide coverage under the policy based upon the property damage that occurred when Plaintiff's residence burned on May 21, 2003.

For coverage to arise under the general commercial liability policy, there must be evidence

8

to show Wade is responsible for some physical injury to tangible property (or for some occurrence causing a loss of use of tangible property that is not itself physically injured) and that this "property damage" occurred during the policy period, *i.e.*, between May 2, 2001 and August 21, 2002. Plaintiff's complaint alleges that the HVAC unit, sold by Sears and installed by Wade, was negligently installed. Sears contends that coverage arises under the Grange Mutual general commercial liability policy because any negligent acts of the insured, Wade, would have occurred during his installation of the HVAC unit at the Roddy residence, which took place in March 2002 and therefore within the policy period. There is no dispute that Wade's only activity at the Roddy residence happened within the policy period. It is also clear that Plaintiff claims the fire at the residence was caused by the negligent installation of the HVAC unit. From these facts, Sears contends "the fire at the Roddy's home resulted from the damage which occurred during the installation of the HVAC unit . . . ." (Court File No. 34, part 1, at 4).

A careful reading of Sears's argument reveals that Sears equates the possibility of *negligent installation* with the notion that *physical damage to tangible property occurred during the installation*. The evidence of record, however, does not support this conclusion, and neither does the general commercial liability policy. It its brief, Sears asserts "any property damage for which Bill Wade was responsible must have occurred during the policy period." (*Id.*). This may be true enough, but the assertion is not evidence to establish that "property damage" actually occurred during the allegedly negligent installation. The record lacks any evidence to show that Wade caused any property damage during the allegedly negligent installation of the HVAC unit. Thus, the record contains only mere speculation whether Wade caused any property damage, under the terms of the policy, during the policy period. While Wade testified that any property damage he *may have*

9

caused *would have* occurred during late March 2002 when he was working at the Roddy residence, and not afterwards, Wade did not testify that he *did* cause any property damage at the Roddy residence (Wade Dep. at 116). Sears, as third party plaintiff, has not come forward with any other evidence to show Wade caused any property damage at the Roddy residence. Thus, the record is devoid of proof on which a jury could reasonably rely to find coverage arises under Wade's general commercial liability policy in this case.

In support of its motion for summary judgment, Grange Mutual relies on *Mirza v. Outdoor Leisure, Inc.*, 625 So. 2d 199 (La. Ct. App. 1993). In *Mirza*, the plaintiff brought a negligence action against Outdoor Leisure, Inc. and its commercial general liability insurer to recover for her injuries when she stepped through a deck that Outdoor Leisure installed along with a spa at her residence. *Id.* at 200. Outdoor Leisure installed the spa and the connected deck during the effective period of its commercial general liability policy, but the plaintiff stepped through the deck three years after the policy expired. *Id.* Contending no coverage existed for the plaintiff's injury, the insurer sought and received a summary judgment. *Id.* The appellate court affirmed summary judgment for the insurer because the policy specifically stated it applied only to bodily injury and property damage which occurs during the policy period and the plaintiff's injuries happened after the policy expired. *Id.* at 201-02. Although the duration between the installation and the injury in this case is shorter than that in *Mirza*, the policy language, requiring that bodily injury or property damage occur during the policy period, is the same in this case as in the *Mirza* general commercial liability policy.[6] This language is not ambiguous but rather clearly provides coverage only when property damage occurs

---

[6] The policy in *Mirza* stated, "This insurance applies only to 'bodily injury' and 'property damage' which occurs during the policy period." *Mirza*, 625 So. 2d at 201.

10

within the policy period. *Id.* at 201-02. Consequently, Grange Mutual is entitled to a summary judgment that coverage does not apply in this case because there is no dispute of material fact whether property damage occurred before the cancellation of Wade's general commercial liability policy.

Sears also argues in its supplemental brief that Grange Mutual should be denied summary judgment because Grange Mutual may have initially provided a defense in this matter to Wade without reserving its right to later deny coverage to Wade under the policy (Court File No. 34, part 1, at 4-5). According to Sears, Grange Mutual waived its right to deny coverage to Wade and should not be released on summary judgment (*id.* at 5). "Under Tennessee law, an insurer is estopped to deny coverage where it has 'taken charge of and conducted the defense of the claims asserted against its insured, without having reserved its rights by some form of agreement, stipulation or notice.'" *Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F.3d 678, 681 (6th Cir. 1993) (quoting *American Home Assurance Co. v. Ozburn-Hessey Storage Co.*, 817 S.W.2d 672, 674 (Tenn. 1991)). According to excerpts of Wade's deposition, Grange Mutual hired attorney Mark Kinsman to represent Wade, and Wade spoke with Kinsman about three times by phone and twice in an office over the course of several months in 2003 (Wade Dep. at 43-49). Sometime the following year, Wade received a letter from Kinsman stating he would not be able to represent Wade (*id.* at 46, 49). The record does not disclose whether any claims were pending against Wade during the time he interacted with Kinsman. The only claims filed against Wade were filed on September 9, 2004 and later voluntarily dismissed by Sears (Court File Nos. 9, 22). Contrary to Sears's argument, the limited interaction between Wade and an attorney retained by Grange Mutual, culminating with the conclusion that the attorney would not represent Wade, does not establish that

11

Grange Mutual took charge of and conducted the defense of any claims against Wade. *Cf. Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981) (applying Tennessee law) (holding insurance company undertook defense of action when attorney, retained by insurance company, filed answer and entered into serious negotiations with injured party on insured's behalf). In addition, Sears has presented no authority to support the proposition that whether Grange Mutual waived its right to deny coverage to Wade is relevant to whether Grange Mutual must provide coverage for Plaintiff's claims against Sears under the terms of the policy. Likewise, even if Grange Mutual waived its rights with regard to the defense and coverage of Wade, Sears has not demonstrated how the interaction between Grange Mutual and its non-party insured bears upon whether coverage for the claimed loss exists under the policy.

Sears also argues summary judgment is inappropriate because it never received a copy of the general commercial liability policy Wade obtained from Grange Mutual or a copy of the policy cancellation notice Grange Mutual issued in August 2002. Stating it was prejudiced by the failure to receive these documents, Sears asserts it would be unconscionable and against the interests of justice to hold Sears to the limiting terms of the policy. Sears makes these claims without citation to authority and without significant argument that these factors bear any reasonable relationship to whether coverage for Plaintiff's loss arises under the terms of the Grange Mutual general commercial liability policy. Because this argument does not change the analysis and conclusion that Grange Mutual has shown there is no dispute of material fact whether coverage arises under the policy in this case, Grange Mutual is nevertheless entitled to summary judgment.

**IV. CONCLUSION**

For the reasons stated above, I **RECOMMEND** the Court **GRANT** Third Party Defendant

Grange Mutual's Motion for Summary Judgment (Court File No. 16).

                              s/*Susan K. Lee*
                              SUSAN K. LEE
                              UNITED STATES MAGISTRATE JUDGE